**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

**MARIA JOHNSON,**
**Plaintiff,**

**v.** **Case No. 1:26-cv-00135-MW-ZCB**

**KAREN NUNEZ, individually and as Trustee of the KAREN D. AUER REVOCABLE TRUST,**
**Defendants.**
_____________________________________________/

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiff, MARIA JOHNSON (hereinafter "Plaintiff"), by and through its undersigned counsel, respectfully moves this Honorable Court for entry or an order pursuant to Fed, R. Civ. P. 15 (a)(2) granting Plaintiff leave to file an amended complaint and accepting the filing of the proposed First Amended Complaint attached herewith as Exhibit A. The sole purpose of the amendment is to name the proper defendant:; Karen Nunez, in her capacity as Trustee of the Karen D. Auer Revocable Trust (hereinafter "Trust"), in place of the Trust itself. Because a trust is not a legal entity that may be sued in its own name under Florida Law, justice requires that the pleading be corrected. Plaintiff states as follows.

1. After a time to amend as a matter of course has passed "a party may amend its pleading only with the opposing party's written consent or the courts leave. The court should freely give leave when justice so requires." Fed. R. Civ P. 15(a)(2). Absent a reason such as "undue delay, bad fath or dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment futility of amendment.etc" leave should be freely given. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

2. A party's capacity to be sued in federal court is determined, for parties other than individuals and corporations "by the law of the state where the court is located." Fed R. Civ. P. 17 (b)(3). Under Florida law, a traditional trust is not a distinct legal entity capable of suing or being sued in its own name, it must sue or be sued through its trustee, such that the "general rule under Florida law is that a Trustee is an indispensable party to proceeding affecting trust property". *Hett v. Barron-Lunde*, 290 So. 3d 565, 572 (Fla. 2d DCA 2020). Plaintiff's claims arise from the ownership of, control and management of the subject property held in the Trust. The proper defendant is therefore Karen Nunez in her capacity as Trustee. Absent amendment, the named defendant lacks capacity to be sued, and the case could not be resolved on its merits against the party actually responsible. Therefore, correcting the caption and identification of the defendant ensures the Court adjudicates Plaintiff's claims against the proper party.

3. In compliance with the requirement that a party seeking leave to amend set forth the substance of the proposed amendment attaches the Proposed Amended Complaint as Exhibit A.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order granting this Motion, granting Plaintiff leave to file the Amended Complaint attached as Exhibit A, direct the Clerk to update the case caption accordingly and grant such further relief as the Court deems just and proper.

**RESPECTFULLY FILED**, this Ninth day of September, 2026.

**FLORIDA LEGAL SERVICES, INC.**
**Attorneys for Plaintiff**

By: /s/ Pablo Hereter
Pablo Hereter
Florida Bar No. 1054509
Florida Legal Services
PO Box 533986
Orlando, FL 32853
Phone: (407) 801-4253
Facsimile: (407)505-7327
Email: pablo.hereter@floridalegal.org

By: /s/ Joseph E. Cordova
Joseph Cordova
Florida Bar No. 1011275
Florida Legal Services
PO Box 533986
Orlando, FL 32853
Phone: (407) 801-4224
Email: joseph.cordova@floridalegal.org

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

**MARIA JOHNSON,**
**Plaintiff,**

**v.** **Case No. 1:26-cv-00135-MW-ZCB**

**KAREN NUNEZ, individually and as Trustee of the KAREN D. AUER REVOCABLE TRUST,**
**Defendants.**
_______________________________________/

**AMENDED COMPLAINT**

**FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**PRELIMINARY STATEMENT**

1. Plaintiff, MARIA JOHNSON (hereinafter "Plaintiff"), brings this action to challenge unlawful housing discrimination under both the Federal Fair Housing and Florida Fair Housing Act against Defendants, KAREN NUNEZ, individually and as Trustee of the THE KAREN D. AUER REVOCABLE TRUST (hereinafter "Defendants").

2. This is a two-count action for money damages, court costs, and attorneys fees, with two causes of action arising under both the Florida (FL Stat. 760.23) and Federal Fair Housing Act, 42 U.S.C. §§ 3601 – 3619 (hereinafter "FHA").

3. This case arises from Defendants' refusal to rent a residential dwelling located at 2649 NW 57th Place, Gainesville, FL 32653 ("Rental Property") to Plaintiff based on her familial status. After Plaintiff and Defendants executed a written lease

agreement, Defendants rescinded that agreement upon learning the full household composition of Plaintiff's family and refused to execute the Housing Assistance Payment Contract (hereinafter "HAP Contract") from the Gainesville Housing Authority (hereinafter "GHA"). Defendants subsequently rented the same property to a couple without children.

4. Under federal, state law and local ordinance, housing providers are prohibited from making housing unavailable, or from discriminating in the terms and conditions of rental based on a prospective tenant's familial status. Defendants' conduct constitutes a knowing violation of the Federal Fair Housing Act, the Florida Fair Housing Act, and the Code of Ordinances for the City of Gainesville, Florida.

5. The City of Gainesville Office of Equity and Inclusion (hereinafter "OEI"), acting on behalf of the City of Gainesville Human Rights Board (hereinafter "Board"), conducted a comprehensive investigation and issued a Notice of Determination of Reasonable Cause. The investigation revealed that Defendants' engaged in discriminatory practices such that OEI Cause Determination found that Defendants' refusal to rent to the Plaintiff constituted a violation of the City of Gainesville's Anti-Discrimination Ordinance.

6. Plaintiff seeks declaratory relief, an injunction preventing Defendants from continuing discriminatory practices and actual damages for the emotional and financial harm suffered due to Defendants' violations. Plaintiff further seeks punitive damages to deter Defendants and other landlords from engaging in similar misconduct in the future, as well as related Attorneys' fees and costs.

## JURISDICTION

7. This Court has original jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (Federal Question) based on a claim under the Fair Housing Act 42 U.S.C. § 3613 (Fair Housing).

8. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367, over Plaintiffs' claims under the Florida Fair Housing Act, §760.20, *et. seq.*

## VENUE

9. Venue is proper in the United States District Court, Northern District of Florida, Gainesville Division, pursuant to 28 U.S.C. § 1391(b)(2) and Northern District Local Rule 3.1., because a substantial portion of the events giving rise to this action occurred in Alachua County, Florida and the Rental Property is located within the District.

## PARTIES

10. Plaintiff, MARIA JOHNSON, is an individual residing within Alachua County, Florida at 1300 NE 39th Avenue, Apt. 140, Gainesville, Florida 32609.

11. Defendant, KAREN NUNEZ, individually f/k/a Karen D. Auer (hereinafter "Nunez") is an individual residing within Pasco County, Florida at 15413 Azra Drive, Odessa, Florida 33556.

12. Defendant, Karen Nunez as Trustee of THE KAREN D. AUER RECOVABLE TRUST (hereinafter the "Trust"), is the Trustee of a revocable trust created by Nunez with trust corpus real properties located in Alachua County, Florida.

13. Nunez is the trustee for the Trust, with the Trust's mailing address sharing

Nunez's address in Pasco County, Florida at 15413 Azra Drive, Odessa, Florida 33556. 3

14. At all times relevant to this action, the Trust owns and Nunez holds beneficial interest in a parcel of real property and a single-family dwelling located thereon in Alachua County, Florida, the Rental Property, located at 2649 NW 57th Place, Gainesville, Florida 32653.

**FACTUAL ALLEGATION APPLICABLE TO BOTH COUNTS**

15. At all times relevant to this action, Nunez was a licensed real estate sales associate in the State of Florida carrying License Number SL3221138.

16. As required by Florida law to maintain her license, Nunez regularly completed every two years at least 14 hours of continuing education to maintain her real estate sales associate license. Preceding 2024, Nunez received training on housing discrimination, including the protections afforded under the Fair Housing Act.

17. At all times relevant to this action, Nunez and the Trust utilized the Rental Property as a residential dwelling unit rented to tenants for income and revenue beneficial to Nunez and the Trust. Commencing in or about November 2022, Nunez rented the Rental Property to residential tenants for a monthly rent of $1,800.00

18. The Rental Property's single-family dwelling is approximately 1,170 square feet, with three bedrooms and 2 bathrooms (Exhibit of Photo of Property)

19. At all times relevant to this action, Plaintiff was employed by the Gainesville Housing Authority and was ready, willing and able to rent the Rental Property.

20. Plaintiff is the parent and legal custodian or four (4) minor children, all of

whom had not attained the age of 18 years and were domiciled with Plaintiff. At all times relevant to this action, Plaintiff was a person in the process of securing legal custody of an additional minor child, her nephew, who was also intended to be a member of her household.

21. On or about June 12, 2024, following the conclusion of her prior tenants' rental agreement, Nunez once again listed the Rental Property for rent to prospective tenants on Zillow (Exhibit A - Zillow Posting)

22. Between June 15, 2024 and June 27, 2024, GHA processed the initial tenancy approval for the Rental Property, including a rent reasonableness review and initial inspection. The GHA ultimately found that Plaintiff fell within the applicable payment standard for vouchers. (Exhibit B - Request for Tenancy Approval Packet)

23. Two Housing Quality Standards inspections were conducted. The first inspection, conducted on or about June 20, 2024, resulted in a failure (Exhibit C - Housing Quality Standards Inspection Failure) . The second inspection, conducted on or about June 25, 2024, found the Rental Property in compliance with an expected tenant portion of $902.00 per month and housing assistance copayment of $898.00 to round out the rental payment of $1,800 (Exhibit D - Housing Quality Standards Inspection Passed and Exhibit E - Housing Assistance Invoice History)

24. On or about June 25, 2024, Nunez prepared a lease agreement using the names listed in Plaintiff's Zillow application, without further contacting Plaintiff to clarify or confirm the full composition of her household. The lease was subsequently signed by both the Plaintiff and Nunez. Among its terms, the lease required payment of a

security deposit, and first and last months' rent on July 31, 2024. (Exhibit F - Lease 5 Agreement)

25. Plaintiff advised Nunez that, pursuant to the requirements of her Housing Choice Voucher and HAP Contract, she was prohibited from paying the last month's rent in advance, as doing so would violate the prior contractual obligations with the GHA.

26. On or about June 27, 2024, Nunez received the HAP Contract from Sara Croissey, a representative from GHA. (Exhibit G - Housing Assistance Payments Contract). The HAP Contract expressly listed the household as consisting of two (2) adults and four (4) children. It further specified that the GHA would remit $898.00 directly to Nunez via direct deposit on July 1, 2024, and Plaintiff would be responsible for paying her individual portion of $902.00 per month. Nunes had every opportunity to review and understand the payment structure set forth in the HAP Contract.

27. Plaintiff confirmed the household composition via text messages with Nunez (Exhibit H - Text Message Exchange Between Parties). Nunez expressed concern upon being apprised of the familial composition of Plaintiff's household and stated that she "needed to think it over" (Exhibit I - Email exchange from Respondent dated June 28, 2024)

28. On or about June 28, 2024, the housing assistance contract was transmitted to the Defendant. Upon receipt the Defendant communicated to the housing authority caseworker that she needed to "think about" the household composition before singing. The Plaintiff then reached out directly via phone call to inquire about the status of the contract. During the phone call, Defendant stated words to the effect of: "I'm not signing

that signing will all those kids in the household," and further stated that this arrangement was "not what we agreed upon" and "not what was on your Zillow application." Plaintiff reminded the Defendant that she had previously spoken by phone with each of Complainant's children prior to the issuance of the housing assistance contract, and was therefore fully aware of the household composition at the time she agreed to lease the unit. Defendant concluded the phone call by stating that the tenancy was "starting off the wrong way," that she wished to "keep it that way," and that she would "pray about it."

29. On or about June 28, 2024, Nunez sent Plaintiff an email stating "I have talked with my husband and prayed about the 'misunderstanding' that we seem to keep having. I don't need any help rationalizing, making decisions, or telling me what I heard. I think it is best that we end this here. I have a good relationship with all of my tenants and would like to keep it that way. I wish you and your family all the luck." (Id.) By this email, Nunez formally rejected the HAP Contract and rescinded the lease agreement that had been signed and executed by both parties.

30. Notably, prior to the email rescinding the lease, Nunez had affirmatively accommodated the delayed security deposit by amending the lease agreement to extend the security deposit due date to July 31, 2024, memorializing the accommodation in a written amended rental agreement signed by Nunez on or about June 27, 2024 (Exhibit F - Lease Agreement). Nunez's owned signed documentation confirms she was aware of this and had agreed to the delayed deposit. Further, the HAP Contract, which Nunez received on or about June 27, 2024, expressly provided that the GHA would remit $898.00 directly to Nunez via direct deposit on July 1, 2024.

31. On or about July 24, 2024, Nunez rented the Rental Property to Carter 7 Bauer and Rachael Nelson, an unmarried couple without children.

***Analysis and Determination Findings of the City of of Gainesville Of ice of Equity and Inclusion***

32. On or about September 6, 2024 Plaintiff filed a complaint (Exhibit J Complaint of Discrimination Completed September 6, 2024) alleging unlawful housing discrimination with the City of Gainesville Office of Equity and Inclusion. On or about September 9, 2024, OEI opened a file and provided notice to the Plaintiff that the investigation would proceed. The Complaint would proceed under the investigation of OEI as EO-E-2024-14.(Exhibit K - Notice of Receipt from the Office of Equity and Inclusion from the City of Gainesville)

33. During the Investigation both parties were given the opportunity to put forward their Position Statement regarding the discrimination. (Exhibit L - Respondent's Position Statement and Exhibit M - Complaint's Rebuttal to Position Statement)

34. On or about December 4, OEI completed its Investigative Report (Exhibit N - Investigative Report). On or about February 13, 2025 OEI signed off on the Investigative Report and submitted the matter to the Board.

35. The OEI Investigative Report established through a comprehensive Review of the evidence a clear pattern of discriminatory conduct directed at the Plaintiff on the basis of her familial status. The Board concluded that each prima facie element of a familial status discrimination complaint was satisfied: (1) The Plaintiff is a member of a protected class as a mother with minor children; (2) Plaintiff inquired about and applied

for the Rental Property; (3) Nunez, with knowledge of Plaintiff's familial status on two separate and distinct occasions (First at the open house on or about June 15, 20254 and second upon receiving the HAP contract on or about June 27, 2024) refused to rent the Rental Property to the Plaintiff ; and (4) Nunez subsequently rented the Rental Property to a couple without children, establishing her willingness to rent to persons outside Plaintiff's protected class.

36. On or about February 24, 2025, the Board convened to discuss Plaintiff's complaint and adopted the findings of the OEI Investigative Report, concluding that discrimination based on familial status was the "but-for" cause for Nunez's refusal to rent. That same day, the Board issued a Notice of Determination of Reasonable Cause finding the Nunez violated the City's of Gainesville's Anti Discrimination Ordinance, on the basis of Familial Status (Exhibit O - Notice of Determination of Reasonable Cause).

37. On or about March 5, 2025, Plaintiff elected to file a civil action and administrative case before the Board was closed (Exhibit P - Election to begin Civil Action).

## CLAIMS FOR RELIEF

### COUNT I
### FAIR HOUSING ACT VIOLATIONS DUE TO FAMILIAL STATUS
### *42 U.S.C. § 3604(a)*

38. Plaintiff incorporates by reference Paragraphs 1 through 35 as if fully forth herein.

39. This is a cause of action for actual damages, punitive damages, court costs, and attorneys fees pursuant to the FHA, 42 U.S.C. § 3613(c).

40. The FHA defines "familial status" as one or more individuals (who have not attained the age of 18 years) being domiciled with a parent or another person having legal custody of such individual or individuals; or the designee of such parent or other person having such custody, with the written permission of such parent or other person. (42 U.S.C. § 3602(k)). The protections afforded against discrimination on the basis of familial status shall apply to any person who . . . is in the process of securing legal custody of any individual who has not attained the age of 18 years

41. At all times relevant to this action, Plaintiff is the parent and legal custodian of four minor children who have not attained the age of 18 years and who are domiciled with Plaintiff. Plaintiff also sought to secure legal custody of her minor nephew, who was intended to reside in the household. Plaintiff therefore qualifies as a member of the protected class of persons with "familial status" within the meaning of 42 U.S.C. § 3602(k).

42. The FHA makes it unlawful to "otherwise make unavailable or deny a dwelling to any person because of . . . familial status . . .." 42 U.S.C. § 3604(a).

43. Defendants had actual knowledge of Plaintiff's familial status. Plaintiff disclosed her family composition (including her four minor children) directly to Nunez at the open house on or about June 15, 2024. Defendants were again placed on explicit notice of Plaintiff's familial status and household size upon Nunez's receipt of the HAP Contract on or about June 27, 2024, which expressly listed two adults and four children as occupants.

44. Defendants' decision to rescind the fully executed lease agreement and

refusal to execute the HAP Contract was made only after Nunez received the HAP Contract confirming the full familial composition of Plaintiff's household. This rescission made the Rental Property unavailable to Plaintiff because of her familial status which is in violation of 42 U.S.C. § 3604(a) .

45. Following her refusal to rent to the Plaintiff, Nunez rented the Rental Property on or about July 24, 2024, to Carter Bauer and Rachael Nelson, an unmarried couple without children. This establishes that the Rental Property remained available and that Nunez was in fact willing to negotiate and execute a rental agreement with individuals outside of the Plaintiff’s protected class.

46. Nunez is a licensed real estate sales associate who, as required by Florida Law, received regular training in fair housing protections, including the prohibitions on familial status discrimination. Nunez’s decision to rescind the executed lease refused to execute the HAP Contract upon learning the full composition of the Plaintiff’s household constitutes willful and knowing discrimination in reckless disregard of Plaintiff’s federally protected fair housing rights.

47. As a direct and Proximate Results of Defendants' unlawful discriminatory conduct, Plaintiff suffered actual damages from the actions and omissions of Defendants, including but not limited to the costs associated with loss of secured housing, economic harm over a period of approximately eight months including an increase in rent and the loss of Plaintiff’s Housing Choice Voucher benefits, relocation and moving costs, increased transportation costs, and collateral burden of a failed relocation that would not have occurred but for Defendants’ discriminatory conduct. Plaintiff also suffered 11

significant and ongoing emotional distress, including familial disruption, shame, humiliation, and mental anguish, from her inability for her nephew to join the household as intended and is entitled to recovery of those actual damages pursuant to 42 U.S.C. § 3613(c).

48. Johnson is also entitled to punitive damages in an amount to be determined by the trier of fact pursuant to 42 U.S.C. § 3613(c). Given the Defendants' discriminatory conduct was willful, intentional, and carried out with knowledge that their actions violated the Fair Housing Act. The rescission of a fully executed lease agreement immediately upon learning the full familial composition of Plaintiff's household demonstrates a degree of reprehensible behavior as to warranting punitive damages.

## COUNT II
## FAIR HOUSING ACT VIOLATIONS BECAUSE OF FAMILIAL STATUS IN THE TERMS, CONDITIONS AND PRIVILEGES OF RENTAL
### *42 U.S.C. § 3604(b)*

49. Plaintiff incorporates by reference Paragraphs 1 through 35 as if fully forth herein.

50. This is a cause of action for actual damages, punitive damages, court costs, and attorneys fees pursuant to the FHA, 42 U.S.C. § 3613(c)

51. The FHA also prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of . . . familial status . . .." 42 U.S.C. § 3604(b).

52. As set forth above, Defendants had actual knowledge of Plaintiff's Familial

Status on two separate occasions during the rental process. Despite executing a written lease agreement, Defendants imposed conditions and terms on the Plaintiff that were not applied to prospective tenants outside her protected class, rescinded the executed lease and refused to execute the HAP Contract upon confirmation of Plaintiff's household composition.

53. Defendants failed to offer Plaintiff the same terms and conditions for renting as those provided to other applicants, such as Carter Bauer and Racheal Nelson. Defendants provided more favorable terms and were more accommodating to these individuals, such that they executed a lease agreement with them. Mr. Bauer and Ms. Nelson did not have minor children and thus were not subject to the same scrutiny applied to the Plaintiff by the Defendants.

54. Defendants' conduct in rescinding the executed lease agreement and refusal to execute the HAP Contract based on the familial composition of Plaintiff's household constitutes unlawful discrimination in the terms, conditions, and privileges of the rental dwelling in violation of 42 U.S.C. § 3604(b).

55. As a direct and Proximate Results of Defendants' unlawful discriminatory conduct, Plaintiff suffered actual damages from the actions and omissions of Defendants, including but not limited to the costs associated with loss of secured housing, economic

harm over a period of approximately eight months including an increase in rent and the loss of Plaintiff's Housing Choice Voucher benefits, relocation and moving costs, increased transportation costs, and collateral burden of a failed relocation that would not have occurred but for Defendants' discriminatory conduct. Plaintiff also suffered 13 significant and ongoing emotional distress, including familial disruption, shame, humiliation, and mental anguish, from her inability for her nephew to join the household as intended and is entitled to recovery of those actual damages pursuant to 42 U.S.C. § 3613(c).

56. Johnson is also entitled to punitive damages in an amount to be determined by the trier of fact pursuant to 42 U.S.C. § 3613(c). Given the Defendants' discriminatory conduct was willful, intentional, and carried out with knowledge that their actions violated the Fair Housing Act. The recession of a fully executed lease agreement immediately upon learning the full familial composition of Plaintiff's household demonstrates a degree of reprehensible behavior as to warranting punitive damages.

**COUNT III**
**FLORIDA FAIR HOUSING ACT VIOLATIONS DUE TO FAMILIAL STATUS**
***Fla. Stat. §760.23(1)***

57. Plaintiff incorporates by reference Paragraphs 1 through 35 as if fully forth herein.

58. This is a cause of action for actual damages, punitive damages, court costs, and attorneys fees pursuant to the Florida Fair Housing Act ("FFHA"), Fla. Stat. §760.35(1).

59. The FFHA defines "familial status" as one or more individuals (who have not attained the age of 18 years) being domiciled with a parent or other person having legal custody of such individual or individuals; or a designee of such parent or other person having legal custody, with the written permission of such parent or other person. ( Fla. Stat §760.22(5)). Furthermore the FFHA affords these protections against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years. (Fla. Stat. §760.23(6))

60. At all times relevant to this action, Plaintiff is the parent and legal custodian of four minor children who have not attained the age of 18 years and who are domiciled with Plaintiff. Plaintiff also sought to secure legal custody of her minor nephew, who was intended to reside in the household. Plaintiff therefore qualifies as a member of the protected class of persons with "familial status" within the meaning of Fla. Stat. §760.22(5)

61. The FFHA makes it unlawful to "otherwise make unavailable or deny a dwelling to any person because of . . . familial status . . .." Fla. Stat. §760.23(1).

62. Defendants had actual knowledge of Plaintiff's familial status. Plaintiff disclosed her family composition (including her four minor children) directly to Nunez at the open house on or about June 15, 2024. Defendants were again placed on explicit notice of Plaintiff's familial status and household size upon Nunez's receipt of the HAP Contract on or about June 27, 2024, which expressly listed two adults and four children as occupants.

63. Defendants' decision to rescind the fully executed lease agreement and refuse to execute the HAP Contract was made only after Nunez received the HAP Contract confirming the full familial composition of Plaintiff's household. This rescission made the Rental Property unavailable to Plaintiff because of her familial status which is in violation of Fla. Stat. §760.23(1).

64. Following her refusal to rent to the Plaintiff, Nunez rented the Rental Property on or about July 24, 2024, to Carter Bauer and Rachael Nelson, an unmarried couple without children. This establishes that the Rental Property remained available and that Nunez was in fact willing to negotiate and execute a rental agreement with individuals outside of the Plaintiff's protected class.

65. Nunez is a licensed real estate sales associate who, as required by Florida Law, received regular training in fair housing protections, including the prohibitions on familial status discrimination. Nunez's decision to rescind the executed lease refused to execute the HAP Contract upon learning the full composition of the Plaintiff's household constitutes willful and knowing discrimination in reckless disregard of Plaintiff's federally protected fair housing rights.

66. As a direct and Proximate Results of Defendants' unlawful discriminatory conduct, Plaintiff suffered actual damages from the actions and omissions of Defendants, including but not limited to the costs associated with loss of secured housing, economic harm over a period of approximately eight months including an increase in rent and the loss of Plaintiff's Housing Choice Voucher benefits, relocation and moving costs, increased transportation costs, and collateral burden of a failed relocation that would not

have occurred but for Defendants' discriminatory conduct. Plaintiff also suffered significant and ongoing emotional distress, including familial disruption, shame, humiliation, and mental anguish, from her inability for her nephew to join the household as intended and is entitled to recovery of those actual damages pursuant Fla. Stat. 16 §760.35(1).

67. Johnson is also entitled to punitive damages in an amount to be determined by the trier of fact pursuant to Fla. Stat. §760.35(1). Given the Defendants' discriminatory conduct was willful, intentional, and carried out with knowledge that their actions violated the Fair Housing Act. The rescission of a fully executed lease agreement immediately upon learning the full familial composition of Plaintiff's household demonstrates a degree of reprehensible behavior as to warranting punitive damages.

## COUNT IV
## FLORIDA FAIR HOUSING ACT VIOLATIONS BECAUSE OF FAMILIAL STATUS IN THE TERMS, CONDITIONS AND PRIVILEGES OF RENTAL
***Fla. Stat. §760.23(2)***

68. Plaintiff incorporates by reference Paragraphs 1 through 35 as if fully forth herein.

69. This is a cause of action for actual damages, punitive damages, court costs, and attorneys fees pursuant to the FFHA, Fla. Stat. §760.35(1).

70. The FFHA also prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of . . . familial status . . .." Fla. Stat. §760.23(2).

71. As set forth above, Defendants had actual knowledge of Plaintiff's Familial Status on two separate occasions during the rental process. Despite executing a written lease agreement, Defendants imposed conditions and terms on the Plaintiff that were not applied to prospective tenants outside her protected class, rescinded the executed lease and refused to execute the HAP Contract upon confirmation of Plaintiff’s household composition.

72. Defendants failed to offer Plaintiff the same terms and conditions for renting as those provided to other applicants, such as Carter Bauer and Racheal Nelson. Defendants provided more favorable terms and were more accommodating to these individuals, such that they executed a lease agreement with them. Mr. Bauer and Ms. Nelson did not have minor children and thus were not subject to the same scrutiny applied to the Plaintiff by the Defendants.

73. Defendants’ conduct in rescinding the executed lease agreement and refusal to execute the HAP Contract based on the familial composition of Plaintiff's household constitutes unlawful discrimination in the terms, conditions, and privileges of the rental dwelling in violation of Fla. Stat. §760.23(2).

74. As a direct and Proximate Results of Defendants' unlawful discriminatory conduct, Plaintiff suffered actual damages from the actions and omissions of Defendants, including but not limited to the costs associated with loss of secured housing, economic harm over a period of approximately eight months including an increase in rent and the loss of Plaintiff’s Housing Choice Voucher benefits, relocation and moving costs, increased transportation costs, and collateral burden of a failed relocation that would not

have occurred but for Defendants' discriminatory conduct. Plaintiff also suffered significant and ongoing emotional distress, including familial disruption, shame, humiliation, and mental anguish, from her inability for her nephew to join the household as intended and is entitled to recovery of those actual damages pursuant to Fla. Stat. 18 §760.35(1).

75. Johnson is also entitled to punitive damages in an amount to be determined by the trier of fact pursuant to Fla. Stat. §760.35(1). Given the Defendants' discriminatory conduct was willful, intentional, and carried out with knowledge that their actions violated the Florida Fair Housing Act. The recession of a fully executed lease agreement immediately upon learning the full familial composition of Plaintiff's household demonstrates a degree of reprehensible behavior as to warranting punitive damages.

**ATTORNEYS FEES AND COSTS (ALL COUNTS)**

76. Plaintiff has incurred or will incur costs in the prosecution of this civil action and is entitled to recovery of the same. Further, Plaintiff retained the undersigned attorneys to protect her rights and interest herein, and the undersigned attorneys may be entitled to the recovery of reasonable attorneys fees and costs pursuant to applicable law (42 U.S.C. § 3613(c)). Plaintiff assigned to the undersigned attorneys all entitlement to the recovery of attorneys fees herein and entitlement to any costs advanced on her behalf.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, MARIA JOHNSON, respectfully requests that this Court:

A. Enter final judgment in favor of Johnson and against Defendants;

B. Award to Plaintiff all damages permitted by law against Defendants including actual damages and punitive damages from Defendants

C. Award Johnson reasonable attorneys fees and court costs from Defendants, and enter an appropriate judgment; and

D. Grant such other relief that the Court deems necessary or appropriate. DEMAND FOR JURY TRIAL

## JURY DEMAND

Plaintiff hereby demands a trial by Jury.

**RESPECTFULLY FILED**, this 8th day of October, 2026.

**FLORIDA LEGAL SERVICES, INC.**
**Attorneys for Plaintiff**

By: /s/ Pablo Hereter
Pablo Hereter
Florida Bar No. 1054509
Florida Legal Services
PO Box 533986
Orlando, FL 32853
Phone: (407) 801-4253
Facsimile: (407)505-7327
Email: pablo.hereter@floridalegal.org

By: /s/ Joseph E. Cordova
Joseph Cordova
Florida Bar No. 1011275
Florida Legal Services
PO Box 533986
Orlando, FL 32853
Phone: (407) 801-4224
Email: joseph.cordova@floridalegal.org